FILED

2003 OCT 22 P 12: 03

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATHAN ROSEN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01 CV 00743(JCH) |
| - against - | : | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, MEDIANET, INC.; ACS TRADEONE MARKETING, INC.; AFFOLIATED COMPUTER SERVICES, INC.; JOSEPH FERRIS; JOHN SCHIEVE and DALE REBHORN, | : : : : : : | October 22, 2003 |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE IBM DEFENDANTS' MOTION TO STRIKE**

Submitted By:

Richard A. Bieder (ct 04208)
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: 203-781-0880
Fax: 203-368-3244

COUNSEL FOR THE PLAINTIFF,
NATHAN ROSEN

**ORAL ARGUMENT NOT REQUESTED**

Plaintiff Nathan Rosen ("Rosen") respectfully submits this memorandum of law, together with the accompanying Declaration of Richard Bieder, dated October 22, 2003 ("Bieder Decl."), in opposition to the motion by Defendants International Business Machines Corporation, Joe Ferris, John Schieve and Dale Rebhorn (collectively the "IBM Defendants") to strike the Affidavit of Jeffrey Paul dated August 11, 2003 ("Paul Affidavit").  Defendants ACS TradeOne Marketing, Inc. and Affiliated Computer Services, Inc. (collectively the "TradeOne Defendants") have not joined in the instant motion to strike.[1]

As discussed below, plaintiff respectfully submits that the Court should either (a) deny the motion to strike as moot since the IBM Defendants have failed to first meet their initial burden under Fed. R. Civ. P Rule 56(c), (b) deny the instant motion on the merits as Mr. Paul's statements are not violative of Fed. R. Civ. P. Rule 56(e), or, alternatively, (c) deny the IBM Defendants' evidentiary objection under Fed. R. Evid. 701 as premature since such objections may and should be raised and addressed at trial.

PRELIMINARY STATEMENT

In support of their motion to strike, the IBM Defendants make the unfounded argument that "Paul's deposition confirms that he has absolutely no factual foundation" for the statements contained in his affidavit. IBM Defendants' Memorandum of Law, at

---

[1] As the Tradeone Defendants have not moved to strike the Paul Affidavit, the statements in the Paul Affidavit remain unchallenged in respect to the claims brought against these defendants.

1

p. 3.² In fact, the deposition testimony of Mr. Paul effectively refutes the IBM Defendants' arguments and establishes a sufficient foundation, for purposes of Fed. R. Civ. P. Rule 56(e), upon which to deny the IBM Defendants' instant motion.³

Indeed, for more than a decade, Mr. Paul has been involved in channel sales for software companies, such as Sequel, Dunn & Bradstreet and Isogen, as well as directly involved in the marketing of software products through IBM's Independent Software Vendor ("ISV") program known as the SVMP. Paul Dep., at pp. 9, 12, 13, 18 and 19. Mr. Paul primarily held the senior position for channel sales in these companies under the title of Director of Channel Sales. Id. He undeniably has extensive personal experience in the matters raised in his affidavit and deposition.⁴

As Director of Channel Sales for Sequel, Mr. Paul had first-hand experience with the matters raised both in his affidavit and deposition concerning Sequel's customers and sales:

> Q. As director of channel sales, can you just generally describe for me the various job duties you had in the Sequel position?

---

² By way of background, after being served with plaintiff's papers in opposition to defendants' summary judgment motions, defendants requested and obtained, with consent of plaintiff's counsel, an extension of time to subpoena and depose Mr. Paul in connection with the preparation of their reply papers. Mr. Paul's deposition was taken by defendants on September 10, 2003 ("Paul Dep.") (relevant portions are attached as Exhibit A to the Bieder Decl.). Defendants thereafter submitted 35 pages of reply memoranda of law and several other submissions in further support of their summary judgment motions, but omitted any reference to the deposition testimony of Mr. Paul.

³Rule 56 expressly authorizes statements in affidavits to be supplemented by deposition testimony. See Fed. R. Civ. P. Rule 56(e). See Newport Electronics, Inc. v. Newport Corp., 157 F. Supp.2d 202, 211 (D. Conn. 2001) (Hall, J) (Under Rule 56(e), the court evaluated the affidavit in conjunction with the witness' deposition testimony.)

⁴ Indeed, IBM had even recruited Mr. Paul for its channel sales division. Paul Dep., at p. 16.

2

> A. Sure. I would identify potential partners for us to work with to enter into reselling relationships. I would recruit those candidates, consummate a relationship, plan rollout activities and execute a marketing program and a sales program.
>
> Q. When you say "identify potential partners," are you referring to entities that would resell?
>
> A. They could resell, they could co-sell, they could refer.

Paul Dep., at pp. 30-31. At Sequel, Mr. Paul reported directly to the president of the company, Id., at p. 27, and, as his deposition testimony bears out[5], Mr. Paul plainly is knowledgeable about Sequel's relationship with IBM:

> Q. Describe the relationship Sequel had with IBM.
>
> A. Sure. We were a DB2 development partner and cooperative -- I don't remember the name of the program. It was a co-sell relationship with IBM. I'm going to say cooperative marketing partner, but that may not be the exact term.
>
> *********************
> Q. Was this relationship formalized in any way?

---

[5] The IBM Defendants attempt to improperly bolster their arguments by omitting from the record any reference to Mr. Paul's signed Errata Sheet to his Deposition Transcript. See Bieder Decl., Exhibit B. The IBM Defendants omitted any reference to the Errata Sheet despite the changes to the very portions of the transcript that are attached to their Motion to Strike. The Errata Sheet explanatorily changed the testimony on pages 60-62 and pages 67-70 of Mr. Paul's Deposition Transcript, which pages are attached to the Affidavit of Patrick W. Shea, sworn to on October 6, 2003. The IBM Defendants should have included the Errata Sheet in the record and, in fact, made such an argument in their Reply Memorandum In Further Support Of Their Motion For Summary Judgment, dated October 7, 2003, page 12 ("[B]oth answers remain part of the record.") (Citing to Podell v. Citicorp Diners Club, Inc., 112 F.3d 98 (2d Cir. 1997)).

3

> A. Yes, it was.
>
> Q. What form did it take?
>
> A. There was a formal contract that talked about us porting the DB2 program and there was a marketing program outlined that we would adhere to and IBM would have cooperative marketing funds for us to tap into.

Paul Dep., pp 35, 37. Mr. Paul is not only knowledgeable about the Sequel-IBM relationship, but his deposition testimony also confirms that he had personal involvement in the companies' activities occurring within that relationship, including the IBM/Sequel marketing activities which form part of the foundation for the statements contained in his affidavit:

> We did sales training for IBM salespeople, sales training for IBM resellers. We did direct mail pieces to be done with IBM. We co-branded mailing pieces and we did direct account calls with IBM salespeople.

Paul Dep., pp. 40-41. Mr. Paul also has personal experience with the generation of revenues arising from other ISVs' participation in IBM's SVMP program. The SVMP program "was an IBM direct reselling program [ ]where the IBM sales force could sell our product directly." Paul Dep., at p. 53; see also Paul Dep., at pp. 55-56:

> It was a program where a third-party vendor, outside IBM product is identified as an IBM product, as an IBM offering so that it's available on an IBM fee schedule, such that a customer can purchase it as part of their IBM budget.
> It would qualify for IBM discounts.
> It would also qualify the IBM sales force for commission, as well as quota attainment if that product were sold. And it's a highly coveted

4

position if you're a third party.

Mr. Paul testified at his deposition about certain of his personal experiences with IBM' SVMP program:

> I have a history of working with IBM
> where they resold products for us and I know the
> amount of support that you get from the sales
> force is a direct impact on your probability of
> being successful.
> \*\*\*
> When I was at Isogon, IBM was a
> reseller of our product and I was aware that
> support from a sales force has a very big impact
> on your success.

Paul Dep., pp. 61, 62. It was this program at IBM which Rosen was unable to conclude for Sequel and which led to the loss of revenues at Sequel and Rosen's consequential loss of commissions arising from those revenues. Paul Dep., at p. 66.

The deposition testimony of Mr. Paul proves that a rational basis exists for the statements contained in his affidavit and that a sufficient evidentiary foundation may be established by Mr. Paul at trial. Defendants will, of course, have the opportunity to further question Mr. Paul at trial and further cross-examine this witness as to the statements made in his deposition and his affidavit.

ARGUMENT

POINT I

THE PAUL AFFIDAVIT IS NOT VIOLATIVE OF FED. R. CIV.
P. 56(e); MR. PAUL'S STATEMENTS SHOULD NOT BE STRICKEN

It is settled law in the Second Circuit, and in this District, that Rosen as "the nonmoving party [need not] produce evidence in a form that would be admissible at trial

in order to avoid summary judgment." Rivera v. Lopez, 2003 U.S. App. LEXIS 12274, at *4 (2d Cir. June 16, 2003), quoting Celotex Corp. V. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548 (1986); Cockfield v. United Technologies Corp., 2003 U.S. Dist. LEXIS 18040 (D. Conn. October 7, 2003):

> "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. V. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548 (1986). The context of the Supreme Court's statement in Celotex makes clear that, in addition to not having to depose its own witnesses, a non-moving party could meet its rebuttal burden with evidentiary materials both not specifically identified in Fed. R. Civ. P. 56 and not currently in admissible form. (citations omitted).

See Galindez v. Miller, 2003 U.S. Dist. LEXIS 17592, at *15-16 (D. Conn. September 30, 2003)[6]; Richardson v. Metropolitan District Commission, 2003 U.S. Dist. LEXIS 12757, at *28 (D. Conn. July 23, 2003) (Hall, J.) (quoting Celotex Corp., supra.); Keene v. Hartford Hospital, 208 F. Supp.2d 238, 242 (D. Conn. 2002) (Hall, J.) (also quoting Celotex Corp., supra.). Further, unlike trial, all evidence and facts must be viewed and all reasonable inferences must be drawn by the court in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). At trial, questions of credibility and the weighing of evidence generally "'are jury functions, not those of a judge.'" Richardson v. Metropolitan District Commission, 2003 U.S. Dist. LEXIS 12757, at *6 (Quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed.2d 202, 106 S. Ct. 2505 (1986)). Not surprisingly, the

---

[6] The Court in Galindez held that so long as the "proffered submissions point to relevant potentially admissible evidence at trial that is sufficient to defeat [the summary judgment motion]." Id. at *17. The Court noted that the denial of the summary judgment motion was not a "predetermination" as to the subsequent admissibility of the submissions at trial. Id.

6

cases relied upon by the IBM Defendants in support of their evidentiary objection under Fed. R. Evid. 701 do not arise in the context of a Rule 56 proceeding, but rather at trial. See United States v. Garcia, 291 F.3d 127 (2d Cir. 2002); KW Plastics v. U.S. Can Co., 13 F. Supp.2d 1265, 1274 (M.D. Ala. 2001); Hester v. BIC Corp., 225 F.3d 178 (2d Cir. 2000).[7] Compare Iacobelli Construction, Inc. v. County of Monroe, 32 F.3d 19, 25 (2d Cir. 1994) (Witness is not required under Rule 56(e) to include the data supporting his conclusions).

In his affidavit, Mr. Paul identified the specific customers through which Sequel lost revenues that would have been generated through IBM's SVMP program.[8] In addition to being intimately involved in IBM's marketing processes for Sequel, Mr. Paul testified that he had personal experience with the revenues generated by IBM's SVMP program. At this stage in the proceedings, the statements of Mr. Paul are sufficiently grounded upon his personal experience not be stricken under Rule 56. See Celotex, 477 U.S. at 325 ("Rule 56 does not require the nonmoving party to depose her own witnesses.")

Here, the IBM Defendants had the opportunity to further question this witness at his pre-trial deposition should they had wished to examine his statements as to his (a) past experiences with revenues generated by IBM's SVMP program, and (b) his

---

[7] The one case relied upon by the IBM Defendants involving summary judgment is part of a particular line of authority expressly limited to employment discrimination actions and involve subjective opinion testimony concerning the discriminatory motivations behind a employer's decision-making. See p. 11, infra.

[8] In the errata sheet to his deposition transcript, Mr. Paul stated that Sequel had prepared detailed sales projections based on, in part, its admission into IBM's SVMP program. It is anticipated that both sides will seek such records by subpoena for trial.

7

involvement and perception of the Sequel-IBM relationship, as well as the particular customers of Sequel identified in his affidavit. Instead, Mr. Paul was only questioned with respect to the initial sales calls made to these Sequel customers. Paul Dep., pp. 68-71; Errata Sheet. Although the IBM Defendants curtailed their questions at Mr. Paul's deposition (Mr. Paul was neither presented with his affidavit nor specifically questioned at all regarding paragraph 6 of the affidavit), they will again have the opportunity to cross-examine Mr. Paul at trial.

POINT II

SHOULD THE COURT DENY THE IBM DEFENDANTS'
SUMMARY JUDGMENT MOTION ON OTHER GROUNDS;
THE INSTANT MOTION TO STRIKE SHALL BE MOOT

The Court need only render a determination on the instant motion to strike should it first determine that the rather substantial record before it contains no genuine issue of fact. Should an issue of fact exist as to Rosen's claims, the IBM Defendants' instant motion shall be moot. See Newport Electronics, Inc. v. Newport Corp., 157 F. Supp.2d 202, 213 (D. Conn. 2001) (Hall, J.) ("[I]n light of the denial of the motion for summary judgment, the motion to strike is moot.") Only if the moving party has met its initial burden of proving the absence of disputed issues of fact, see LeBoeuf, Lamb, Greene & MacRae v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999), citing to Celotex Corp., 477 U.S. at 323, is the opposing party then obligated to present "specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see Newport Electronics, Inc. v.

8

Newport Corp., 157 F. Supp.2d at 206; Keene v. Hartford Hospital, 208 F. Supp.2d at 242 n3.

Here, Rosen has testified and shown that, but for his reliance on the alleged misrepresentations by the defendants, he would have received additional commissions by permitting certain Torrent revenues in the fourth quarter of 1999 to be booked in January of 2000. See, e.g. Plaintiff's Counter-Statement of Facts, paras. 96-99, 127-130. Rosen also has submitted evidence concerning his opportunity to increase his commissions through Sequel Technology from which his services had to be redirected to Torrent. See Affidavit of Richard Bieder, sworn to on August 11, 2003, Exhibit 24. Although the exact amount of the damages he suffered may be refuted by the IBM Defendants, this issue of fact should await trial, at which time the jury may decide the extent of Rosen's damages, if any. It is of course within the province of the jury not to award Rosen all of the damages he may seek at trial.

The caselaw relied upon by the IBM Defendants is inapposite since Mr. Paul's affidavit is plainly based on his personal knowledge and does not purport to contain hearsay or argumentative statements, as in Hollander v. American Cyanamid Co., 999 F. Supp. 252, 256 (D. Conn. 1998), nor is it subject to the expert witness tests under Fed. R. Evid. 702. See Newport Electronics, Inc. v. Newport Corp., 157 F. Supp.2d at 211-212 (The Court held that the lay witnesses' declarations were admissible because they were based on personal knowledge obtained through their employment and the Court only

9

struck the affidavit of an expert witness under a Daubert analysis, leaving open the opportunity for plaintiff to resubmit the expert witness' testimony at trial).

POINT III

ALTHOUGH THE PAUL AFFIDAVIT AND DEPOSITION TESTIMONY COMPLY WITH FED R. EVID. 701, SUCH A DETERMINATION SHOULD AWAIT THE TRIAL OF THIS ACTION

The IBM defendants acknowledge in their memorandum of law that Fed R. Evid. 701 only requires that the witness have a first-hand basis for his perception and that the statements be helpful for the jury in making a determination about the loss of revenues at Sequel. See United States v. Garcia, 291 F.3d 127, 140 (2d Cir. 2002), quoting United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (quoting Fed R. Evid. 701 Advisory Committee notes) ("The rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'") (Decision relied upon by IBM Defendants).  Here, there can be no dispute that Mr. Paul was personally involved and experienced both in the relationship between IBM and Sequel, as well as the revenues that are generated through IBM's SVMP program.  His testimony at trial would certainly be helpful to the jury in determining the amount of lost commissions suffered by Rosen. The IBM Defendants have not otherwise challenged Mr. Paul's testimony under Fed. R. Evid. 701[c].

To the extent that Mr. Paul's statements constitute a projection on Sequel's loss of revenues, Fed. R. Evid. Rule 701 expressly allows such an opinion, with courts permitting company executives to testify as to lost profits so long as such testimony is based on personal knowledge.  See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d

256, 264 (2d Cir. 1995); <u>Static Control Components, Inc. v. Darkprint Imaging, Inc.</u>, 240 F. Supp.2d 465, 481 (M.D. NC 2002) ("Although parties often enlist the help of expert witnesses to determine damages calculations, business owners, managers and officers are allowed to make damages calculations if they have sufficient personal knowledge of the facts.") (<u>Citing</u> <u>to</u> Fed R. Evid. 701 Advisory Committee's note and additional authorities). Even the decisions relied upon by defendants, such as <u>KW Plastics v. U.S. Can Co.</u>, 13 F. Supp.2d 1265, 1272-1273 (M.D. Ala. 2001), recognize that a company manager, with personal knowledge, can provide projections of lost revenues which shall be deemed admissible at trial:

> With respect to new Rule 701(c), the advisory committee has stated with approval that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." FED. R. EVID. 701 advisory committee note (citing <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153 (3d Cir. 1993) (other citation omitted)."Such opinion testimony," the committee stated, "is admitted not because of experience, training or knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis." FED. R. EVID. 701 advisory committee note (emphasis supplied). New Rule 701, therefore, should be interpreted in a manner consistent with the Third Circuit's holding in Lightning Lube. n12 In that case, the court allowed a quick lube franchisor to offer his lay opinion about future business that he believed he lost as a result of the defendant's tortious interference. The report included estimates for lost future profits from franchises that had not yet been established. See Lightening Lube, 4 F.3d at 1174-75. The franchisor's damages estimate was based on facts and figures generated from his "knowledge and participation in the day-to-day affairs of his business," and partially in reliance upon the reports of an accountant. Id. at 1175.

11

See Lightning Lube, Inc. v. Witco Corp., 4 F.3d at 1175 (Affirmed trial court's admission of lay opinion as to the loss of future business based on the witness' personal knowledge of the day-to-day affairs of the business).

Although in KW Plastics, the court "tentatively" found that the lay witness' opinion was not sufficiently "grounded in personal knowledge" to able to opine as to the loss of future customers six years into the future, the Court only granted the defendant's evidentiary objections without prejudice so that the witness could, upon curing any defects, introduce the opinion at trial. Id., at 1267, 1272 (lay opinion testimony was only "conditionally excluded" by the Court, subject to witness remedying any defects at trial).

Finally, the IBM Defendants' reliance on the decisions in Hester v. BIC Corp., 225 F.3d 178 (2d Cir. 2000) and Minus v. West, 2003 WL 21295122 (E.D.N.Y. May 30, 2003) is without avail. In Hester, the decision involved an appeal from evidentiary rulings made during a jury trial and not under Fed R. Civ. P. 56(e). Moreover, in Hester, the lay witnesses' "subjective impressions" went directly to the ultimate issue in that case, i.e. the defendant employer's discriminatory motivation in a Title VII civil rights action, and that decision, as well as the decision in Minus v. West, is limited to the introduction of subjective opinion testimony in employment discrimination actions. Id., at 185.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court deny the IBM Defendants' motion to strike, or, alternatively, reserve such a determination until

the trial of this action, together with such other and further relief as the Court deems proper.

Dated: Bridgeport, Connecticut
October 22, 2003

Respectfully Submitted,

By: /s/ Richard A. Bieder
Richard A. Bieder ct04208
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
Tel: 203-336-4421
Fax: 203-368-3244
E-mail: rbieder@koskoff.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of Plaintiff's Memorandum of Law In Opposition to Defendants' Motion To Strike, and Declaration of Richard A. Bieder and annexed supporting documents were mailed by overnight mail, postage prepaid, on this 22nd day of October, 2003 to:

Neil Stekloff, Esq.
Paul, Hastings, Janofsky & Walker
1055 Washington Boulevard
Stamford, CT  06901

Neal A. DeYoung